UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

vs.                                                           Case No. 11-20203

RICHARD DEAN WOOLSEY,                     HON. AVERN COHN

    Defendant/Petitioner.
_____/

**<u>MEMORANDUM AND ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
(Doc. 130)
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALALBILITY</u>**

I. Introduction

This is a criminal case. Defendant/Petitioner Richard Dean Woolsey (Woolsey) was found guilty by a jury of conspiracy to commit mail and wire fraud and wire fraud. The Court sentenced Woolsey to 90 months imprisonment. Woolsey timely appealed. The Court of Appeals for the Sixth Circuit affirmed. <u>United States v. Woolsey</u>, No. 14-1693/2488 (6th Cir. Jan. 22, 2016).

Before the Court is Woolsey's <u>pro se</u> motion under 28 U.S.C. § 2255. (Doc. 130). The government has filed a response (Doc. 145) and Woolsey a reply (Doc. 148). For the reasons that follow, the motion will be denied.

II. Background

The background, including the facts leading to Woolsey's convictions and relevant Court proceedings have been described by the Sixth Circuit as follows:

## A. The Scheme

Sometime around 2006, Woolsey devised a plan to fraudulently buy sixteen cabins in Sevierville, Tennessee, for use as vacation rentals. The scheme worked as follows. Woolsey recruited straw buyers from among friends and family, including co-defendant Ryan Vinco (who is not a party to this appeal), marketing the properties as investment opportunities. He managed to set the purchase prices for these cabins higher than the sellers had agreed to accept, funneling the excess (about $150,000 per cabin) to the real estate company that he owned in the form of commissions. Unbeknownst to the lenders, Woolsey, not the straw buyers, provided the money for the down payments and used rental income from the properties as well as money from the commissions to make the mortgage payments.

Woolsey overestimated the demand for these rentals, however, and it soon became evident that the rental income and commissions were going to be insufficient to keep up with the mortgage payments. To cover the shortfall, Woolsey decided to buy up homes in southeastern Michigan in order to flip them for a profit or to refinance them.

Woolsey and Vinco purchased dozens of homes in Michigan using a straw buyer ploy similar to the one used to buy the Tennessee cabins. These purchases involved $2,500 payments to the straw buyers in exchange for their names and credit. As in Tennessee, the straw buyers did not pay the down payments and did not expect to pay the mortgages. Woolsey would then sell the properties and include large commissions to his real estate company, which he used to pay off the Tennessee mortgages and to help fund down payments for straw buyers.

The Michigan houses, however, failed to provide the necessary cash, and Woolsey and Vinco decided to make a last-ditch effort to keep up with the mounting mortgage obligations. Woolsey acted as straw buyer for a property in Northville, Michigan (the Clover Hill property). He applied for an $880,000 loan, stating, falsely, that he intended to live in the house. An appraiser who worked for Woolsey then appraised the Clover Hill property at $1.1 million. In fact, the Clover Hill property was worth only about $663,000. Woolsey convinced the seller to accept $610,000 for the house, and the excess loan money went to Woolsey's real estate business as a commission.

Woolsey made only two payments on the mortgage, and the lender eventually foreclosed. Woolsey was indicted and convicted on charges of Conspiracy to Commit Mail and Wire Fraud and of Aiding and Abetting Wire Fraud.

## B. Sentencing

Following Woolsey's convictions, the probation department recommended a sentencing range of 168-210 months based on a loss amount of at least $11 million. Woolsey submitted his own calculation, ostensibly to point out the errors in the government'|s proposed loss amount, which put the losses at roughly $2,750,000. At the sentencing hearing, the district court accepted Woolsey's lower number and reduced the guidelines range to 97-121 months. After

explaining its calculation, the district court asked if "anyone ha[d] any objection . . . to anything I have said." The government responded that it did not. And defense counsel stated that, "as far as the advisory guidelines, I would concur . . . I would concur with the guideline range at this point, your honor." The district court varied downward from the guideline range and sentenced Woolsey to ninety months of imprisonment followed by three years of supervised release.

With regard to restitution, the government initially estimated the loss at $11 million. It based this determination on evidence and testimony at trial as well as from investigative subpoenas, payment histories, and public records. Woolsey disputed this amount, and the government revised its estimate by disregarding every property that Woolsey had said that he was not involved with, giving him credit for every payment he claimed to have made, and correcting the mortgage amounts he disputed. It then reduced the loss by the resale price of each piece of property. Thus, for example, it concluded that the lender on the Clover Hill property lost $488,000 using the following calculation: Mortgage ($880,000) - Mortgage Payments Made ($17,000) – Resale Price ($375,000). The district court accepted the government's approach and ordered Woolsey to pay $6,167,230.83 in restitution.

United States v. Woolsey, No. 14-1693/2488 at p. 1-4.

III.  The Motion

Woolsey asserts numerous grounds for relief.  The government is correct that his claims fall into two general categories:

> (1) inappropriate use of information Woolsey provided in interview sessions with the government
> (2) Ineffective assistance of counsel claims against each attorney who represented him

IV.  Legal Standards

28 U.S.C. § 2255 provides:

A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

3

28 U.S.C. § 2255(a).  To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict."  Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005).  A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process."  Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999).

As "[§] 2255 is not a substitute for a direct appeal," Regalado v. United States, 334 F.3d 520, 528 (6th Cir. 2003) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal" to merit collateral relief, Frady, 456 U.S. at 166.  Though non-constitutional errors are generally outside the scope of § 2255 relief, see United States v. Cofield, 233 F.3d 405, 407 (6th Cir. 2000), a petitioner can prevail on a § 2255 motion alleging non-constitutional error "by establish[ing] a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process,' " Watson, 165 F.3d at 488 (internal quotation marks omitted) (quoting United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990)).  Accordingly, alleged sentencing errors, including the proper application of the guidelines, "does not warrant collateral relief under § 2255 absent a complete miscarriage of justice." Jones, 178 F.3d at 796.

Woolsey has raised allegations of ineffective assistance of counsel which may be raised for the first time in a § 2255 motion.  Massaro v. United States, 538 U.S. 500, 508–09 (2003).  To establish ineffective assistance of counsel under the Sixth

4

Amendment, Woolsey must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Woolsey must first show that his counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. A court must afford defense attorneys "wide latitude" and, in analyzing their conduct under the Sixth Amendment, must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Defense counsel are entitled to a "strong presumption" that they made "all significant decisions in the exercise of reasonable professional judgment." Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011).

If Woolsey succeeds in proving deficient performance, he must next show that the deficient performance was prejudicial. Prejudice requires more than "some conceivable effect on the outcome of the proceeding," Woolsey must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94.
It is well established that "[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." Dupont v. United States, 76 F.3d 108, 110-11 (6th Cir. 1996) (citations omitted); Wright v. United States, 182 F.3d 458, 467 (6th Cir. 1999) ("Absent exceptional circumstances, or an intervening change in the case law, Wright may not use his § 2255 petition to relitigate this issue [decided on direct appeal]."); accord Withrow v. Williams, 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring) (collecting cases).

5

V. Analysis

A. Use of Interview Statements

Woolsey claims the government was barred from using statements he made in his interviews with the FBI. Woolsey says that the interviews or proffers are like plea discussions protected by Fed. R. Evid. 410 and therefore the statements cannot be used against him. Woolsey's argument is based on the premise that a proffer session can be a plea discussion. Wooley's argument is belied by the language in the proffer agreement, as explained below.

First, paragraph (4) of the proffer agreement states:

"the government may make derivative use of, and may pursue any investigative leads suggested by, any information or statement provided by your client, without restriction. This means, for example, that if your client's statements lead the government to develop additional evidence against your client, the government may use this derivative evidence in any manner including in its case-in-chief against your client and at sentencing."

B. Paragraph (6) of the proffer agreement states "

This proffer discussion is not a "plea discussion within the meaning of Fed. R. Crim.P. 11(f) or Fed.R.Evid. 410. Any use of the statements and information provided at this proffer discussion will be governed by the terms of this letter, and not Fed.R.Crim.P 11(f) or Fed.R.Evid. 410."

Moreover, as the government points out, it did not use Woolsey's proffer statements against him at trial, derivatively or otherwise. This is because Woolsey was already indicted when the proffer took place. Overall, Woolsey is not entitled to relief based on his proffer statements.

B. Ineffective Assistance of Counsel

Woolsey says that several of his attorneys provided ineffective assistance of counsel. None of his allegations of deficient performance pass the Strickland test as

6

applied on habeas review. Each allegation of ineffective assistance is addressed in turn below.

1. Plea Offers

Woolsey first says that his counsel prior to trial, Attorney 1, failed to communicate the government's plea offers. The record shows otherwise. On October 30, 2012, the Court held a status conference for the express purpose of determining whether the government had offered a plea agreement, whether Woolsey knew about the offer and what his response to it was. The transcript of the status conference, attached as Exhibit 6 to the government's response shows the Court fully explained to Woolsey the maximum possible sentence without a plea agreement, and that the government had calculate his guidelines without a plea agreement at 7-8 years. The Court then asked the government if a plea offer had been made. The government responded that plea discussions were in the range of 33-41 months. The Court commented that there was a significant difference between the ranges and the government agreed. Woolsey responded that he knew all of this. Additionally, Attorney 1, has detailed notes about the plea offers discussed with government and shared the details with Woolsey in a letter. See Government's Exhibit 7: Attorney 1's letter to Woolsey dated 8/12/16. Thus, Woolsey cannot show that Attorney 1 was deficient in communicating a plea offer.

As to Woolsey's trial counsel, Attorney 2, he states in an affidavit that Woolsey never showed interest in pleading and always intended to go to trial. See Government's Exhibit 10: Affidavit of Attorney 2, paragraphs 3-4. Thus, Attorney 2 was not deficient regarding plea communications.

2. Pretrial Investigation

Woolsey further says that his attorneys failed to conduct adequate pretrial investigations. Each attorney has responded to the claims, as discussed below.

Woolsey first says that an attorney retained prior to trial, Attorney 3, only met with him 5-6 times. Attorney 3's billing records (Government's Exhibit 8) and affidavit (Government's Exhibit 9: paragraphs 1-2), show otherwise. Indeed, Attorney 3 met with Woolsey 18 times, including a 3.8 hour proffer session. Attorney 3 also had 14 lengthy telephone calls with Woolsey. While Woolsey complains that Attorney 3 should have hired an investigator, Attorney 4 responds that no investigator or expert was hired because of the overwhelming number of witness statements provided by the government. After reviewing this information Attorney 3 advised Woolsey to enter into a plea agreement and cooperate. (Government's Exhibit 9: Paragraphs 3-5). Woolsey also accuses Attorney 3 of withdrawing because Woolsey was not paying him and of advising him to tell the court it was because of conflicts. Attorney 3, however, details Woolsey's refusal to abide by pretrial proscriptions against contacting witnesses and his continued involvement in the same conduct he was indicted for as grounds for his withdrawal. Attorney 3 also states in his affidavit that Woolsey told him (Attorney 3) he would not pay him because he was using his funds to flip houses with people who would be witnesses at the trial. (Government's Exhibit 9: section 7). Wooley's conclusory allegations of ineffectiveness against Attorney 3 are belied by the record and fall short of showing that he was ineffective.

Woolsey further says that Attorneys 1 and 2 also failed to conduct adequate pretrial investigations. Again, the record shows Woolsey's allegations lack merit. Attorney 1's letter makes it clear that he was diligent in reviewing witness statements

8

and prepared summaries. Moreover, Attorney 2 states that he discussed hiring an expert with Woolsey but agreed that the witnesses they called were adequate to explain the situation. Attorney 2 also explains that he spent weeks preparing for trial, including interviewing defense witnesses. (Government's Exhibit 10: Affidavit of Attorney 2, paragraphs 5-6). Thus, neither Attorney 1 or Attorney 2 were ineffective regarding any pretrial investigations.

### 3. Special Verdict

Woolsey further says that Attorney 2 was constitutionally deficient in failing to ask for a special verdict form that would have asked the jury to determine loss and restitution amounts.[1] Woolsey cites Apprendi v. New Jersey, 530 U.S. 466 (2000) in support. Under Apprendi, any fact which increases the penalty for a crime beyond the statutory maximum must be submitted to the jury. However, questions of loss and restitution do not fall into this category. The maximum possible penalty Woolsey faced was 20 years on each of the counts of conviction. Loss and restitution had no impact on his penalty. Further, Attorney 2 states that he did not ask for a special verdict form on issues of loss, number of victims and sophisticated means because they were guidelines issues which were raised and argued at the sentencing hearing. (Government's Exhibit 10: Affidavit of Attorney 2, paragraphs 5-6). Overall, Attorney 2 was not deficient regarding a special verdict form.

---

[1] As the government notes, the Sixth Circuit considered and rejected his claims regarding the amount of the calculated loss and restitution. Absent highly unusual circumstances, such as an intervening change in the law, a §2255 Motion cannot be used to re-litigate an issue that was raised on direct appeal. Wright v. United States, 182 F.3d 458,467 (6th Cir. 1999). However, because Woolsey now characterizes these claims as an Apprendi violation, the government has addressed the claim on the merits.

9

4. Appellate Counsel

Woolsey's last claim of ineffective assistance of counsel is directed at his appellate counsel, Attorney 4. Woolsey says that Attorney 4 failed to raise several issues on appeal that would have been successful. Woolsey does not specify which issues he is referring to, however, he does say that Attorney 4 should have raised the issue regarding the interview statements. Attorney 4's affidavit states that Woolsey never raised the issue during the significant amount of time Attorney 4 spent with him reviewing issues relating to his trial, conviction and sentence. (Government's Exhibit 11: paragraph 5). Again, Woolsey's vague allegations of ineffective assistance do not meet the Strickland standard. Moreover, as explained above, the issue with the interview statements does not warrant relief. Thus, Attorney 4 was not ineffective in failing to raise a meritless claim.

5. Overall

Woolsey has not established that any of his four attorneys of record were deficient in their performance. Moreover, because his claims of error amount to no more than his attorneys' refusal to take positions contrary to well established precedent, or to argue against certain well-documented facts, an evidentiary hearing is not necessary for this Court to determine that Woolsey received effective assistance of counsel. Green v. United States, 65 F.3d 546 (6th Cir. 1995)(where files and records of the court clearly show that petitioner is entitled to no relief, no hearing of any kind is required); Turner v. United States, 183 F.3d 474 (6th Cir. 1999)(no hearing required unless there is a factual dispute about the constitutional infirmity of counsel's performance).

VI. Conclusion

For the reasons stated above, Woolsey has not demonstrated that he is entitled to relief under § 2255. Accordingly, the motion is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of Hilton's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2).[2]  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

SO ORDERED.

Dated: 2/15/2018

S/Avern Cohn
U.S. DISTRICT JUDGE

---

[2] The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. See Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.