UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                           Case Number 11-20203

v.                                         Honorable David M. Lawson

RICHARD WOOLSEY,

              Defendant.

_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Richard Woolsey has filed a motion asking the Court to resentence him to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, or alternatively, to recommend to the Bureau of Prisons that he be transferred to home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 18 U.S.C. 12003(b)(2).  Woolsey has not exhausted his remedies, a necessary prerequisite for seeking compassionate release, and even if he had, he has not demonstrated any extraordinary circumstances justifying immediate release.  However, the Court sees no reason not to recommend early placement by the BOP in home confinement.

I.

In 2013, Woolsey was convicted by a jury of conspiracy to commit wire fraud and aiding and abetting wire fraud.  The Honorable Avern Cohn sentenced him to a 90-month, below-guideline prison sentence. The fraud comprised a complicated, multi-state real estate scheme that Woolsey engineered to overvalue real estate and induce mortgage lenders to approve loans for much more than the properties were worth.  The scheme involved multiple parcels and straw

buyers.  Although the sentencing guideline range was based on a well-litigated loss amount of $2.75 million, the Court ordered Woolsey to pay restitution of $6,167,230.83.

Woolsey's conviction and sentence were affirmed on appeal.  *United States v. Woolsey*, 638 F. App'x 479 (6th Cir. 2016).  Judge Cohn's order denying Woolsey's motion brought under 28 U.S.C. § 2255 likewise was affirmed by the Sixth Circuit.  *Woolsey v. United States*, 794 F. App'x 469, 470 (6th Cir. 2019).

On April 15, 2020, Woolsey filed a *pro se* letter request for compassionate release, which was docketed as a motion.  On May 6, 2020, the case was reassigned to the undersigned per an Administrative Order transferring Judge Cohn's closed cases and the Court entered an order directing a response by May 11, 2020.  A day later, the Court appointed the Federal Community Defender's Office (FDO) to represent Woolsey.  On May 8, 2020, counsel for the FDO entered an appearance on behalf of Woolsey.  It was not until that day that Woolsey filed a request for compassionate release with the warden.

Woolsey is male, 48 years old, and of Caucasian descent.  He has served approximately 68 months of his 90-month sentence.  He is currently confined at FCI Morgantown with a projected release date of March 17, 2021, when good time credits are counted.  The BOP has calculated his halfway house placement to be on September 22, 2020.  To date, there are no reported cases of COVID-19 at Morgantown.  Woolsey says that if released from prison to home confinement, he would reside at a home in Southgate, Michigan with his 19-year-old son.  Woolsey also points out that he has a clean prison record and has completed several educational courses while in prison. Woolsey does not identify any underlying health conditions that would put him at a greater risk if he became infected with the novel coronavirus.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'"  *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).  "But that rule comes with a few exceptions, one of which permits compassionate release."  *Ibid.*  "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).  Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'"  *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions."  *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)).  However, prisoners may not seek judicial relief before they have sought release under this statute from the prison warden.  "Even though [the] exhaustion requirement does not implicate [the Court's] subject-matter jurisdiction, it remains a mandatory condition," and "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf.  To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison."  *Id.* at 833-34 (quotation marks omitted).

Woolsey argues that he should be released immediately because of the global pandemic and the fact that prisons are a hotbed for infection.  He also points to his good prison record as a

basis for release.  The government responds that Woolsey is not entitled to release because he has not exhausted his administrative remedies and there is no basis to waive the exhaustion requirement.  The government also notes that Woolsey has not identified any health conditions which would put him at a high risk.  The government also says that the BOP has put several protocols in place to limit the spread of COVID-19 which militates against releasing inmates such as Woolsey.

The government has the better argument.  In *United States v. Alam*, the Sixth Circuit held that "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court . . . by moving for it on his own behalf," but "[t]o do that, he must 'fully exhaust[] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison."  960 F.3d at 833-34 (quoting 18 U.S.C. § 3582(c)(1)(A)).  The court of appeals further held that the exhaustion requirement is a claim processing rule that does not implicate subject matter jurisdiction, but that it also is mandatory and not subject to waiver, forfeiture, or any pertinent equitable exception, at least where the government timely asserts an objection based on failure to exhaust.

Here, the defendant submitted a request for compassionate release to the prison warden only *after* he filed his motion for release with this Court.  By now thirty days have lapsed since his request, and he eventually received an unfavorable decision, but that, too, came after he filed his motion.  The FSA allows two paths to judicial review of compassionate release rulings by BOP authorities, and both begin with the submission of a request to the warden.  The inmate may seek judicial review if the warden denies his request and the defendant then exhausts his administrative appeals, *see* 28 CFR § 571.63; 28 CFR § 542.15, or 30 days elapses "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."   18 U.S.C. §

3582(c)(1)(A)(i).   But the defendant may not proceed to Court directly without first either completing the administrative appeal process or waiting at least 30 days *after* tendering his request for release.  The defendant has done neither.

Even if the Court could entertain the request for relief compassionate release, Woolsey has not made a convincing case that he is at an elevated risk from COVID-19. He has not identified any underlying medical conditions that puts him at a greater risk. He has not even presented medical records to the Court.  Cases where release have been granted involve defendants with very different circumstances than Woolsey's.  In *United States v. Sawicz*, No. 08-cr-287, 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020), the defendant had hypertension for which he was prescribed Lisinopril and baby aspirin.  He was also housed at a facility where COVID-19 cases were reported.  The defendant had only five more months to serve before being eligible for home confinement and had received permission from his unit manager to transfer to a halfway house. The defendant's application for reentry was in process at the time of the court's decision.  The district court considered *all* of these factors in determining that early release was warranted.

In *United States v. Rodriguez*, No. 03-cr-00271, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020), the defendant was in year 17 of a 20-year sentence.  He had significant health issues including Type 2 diabetes mellitus with diabetic neuropathy, essential hypertension, obesity, and liver abnormalities.  He was housed at a facility with confirmed cases of COVID-19.  He had a good prison record and showed improvement in prison.  Notably, the district court determined that none of these factors (length of sentence, health condition, and prison record) alone were sufficient to warrant release.  However, when taken together, they persuaded the court that release was warranted.

Finally, in *United States v. Coker*, No. 14-085, 2020 WL 1877800 (E.D. Tenn. Apr. 15, 2020) the defendant was wheelchair-bound with severe terminal chronic obstructive pulmonary disease that required oxygen therapy which the BOP admittedly could not provide.  The district court therefore found that the request for relief demonstrated a serious enough condition to warrant release even in the absence of heightened risk from COVID-19.

In the recent cases where inmates have been granted judicial relief on motions for compassionate release due to the pandemic, the defendant  presented a properly exhausted claim that unreasonably was refused despite the existence of severe, chronic, or terminal conditions that might warrant release even in the absence of a pandemic.  Although Woolsey has served most of his sentence and is eligible for release in a few months, he has not made a compelling showing that his condition warrants urgent immediate release.

That is not to minimize the seriousness of the coronavirus pandemic or the alarming rapidity of its spread within federal prisons.  But the pandemic is a global phenomenon and some risk is inherent no matter where Woolsey resides, either at home or in prison.  The existence of COVID-19 in society and the possibility that it may spread to a particular prison alone is not enough independently to justify compassionate release.  He asserts that his risk would be lower at home, but he has not put forth evidence to demonstrate that he is at an especially elevated risk of harm in the present situation of confinement, particularly with no confirmed cases of COVID-19 at the facility where he is housed.  Moreover, Woolsey says he would reside in Southgate. Southgate is in Wayne County.  Wayne County has a large number of confirmed COVID-19 cases.

III.

Woolsey also requests that the Court recommend that the BOP place him in home confinement under the CARES Act, 18 U.S.C. § 12003(b)(2).  A defendant's request for home confinement under the CARES Act is different than a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020); *United States of America, v. Benjamin Gordon*, No. CR416-082, 2020 WL 3964041, at *1 (S.D. Ga. July 13, 2020).  Section 12001(b)(2) is directed at the Attorney General.  If he finds that emergency conditions will materially affect the functioning of the BOP, the Director of the BOP may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of 18 U.S.C. § 3624(c)(2).  Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020).  Under that statute, "[d]esignation of an inmate's place of confinement, including placement in home confinement, rests within the absolute discretion of the BOP."  *United States v. McCloskey*, No. 18-CR-260, 2020 WL 3078332, at *2 (S.D. Ga. June 9, 2020); *see also United States v. Calderon*, No. 1911445, 2020 WL 883084, at *1 (11th Cir. Feb. 24, 2020) (explaining that under 34 U.S.C. § 60541(g)(1)(A), the Attorney General "may" release eligible elderly offenders, and the district court was without jurisdiction to grant relief).  Therefore, the district court ha no authority to grant relief under section 12003(b)(2).

However, the defendant's request might be invoking a similar provision of the Second Chance Act.  "The Second Chance Act of 2007 . . . increases a federal prisoner's eligibility for pre-release placement in a halfway house from 6 to 12 months, and requires the Bureau of Prisons (BOP) to make an individual determination that ensures that the placement is 'of sufficient duration to provide the greatest likelihood of successful reintegration into the community.'"

*Vasquez v. Strada*, 684 F.3d 431, 432-33 (3d Cir. 2012) (quoting 18 U.S.C. § 3624(c)(6)(C)).  "In accordance with the Act, regulations were issued so that placement in a community correctional facility by the BOP is conducted in a manner consistent with 18 U.S.C. § 3621(b)."  *Ibid.* (citing 28 C.F.R. § 570.22).  That statute, in turn, states that any recommendation by the sentencing court that a convicted person serve a term of imprisonment in a community corrections facility "shall have no binding effect on the authority of the Bureau . . . to determine or change the place of imprisonment of that person."  18 U.S.C. § 3621(b).  Relevant factors that the BOP shall consider include "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence; and (5) any pertinent policy statement issued by the Sentencing Commission."  *Lovett v. Hogsten*, No. 09-5605, 2009 WL 5851205, at *1 (6th Cir. Dec. 29, 2009) (citing 18 U.S.C. § 3621(b)).

It appears that the BOP has scheduled Woolsey to be transferred to a community corrections center within about two months from now.  It is not clear to the Court how a recommendation to accelerate that date would affect the BOP's decision making.  But inasmuch as the Court's recommendation is one of the factors the BOP must consider, the defendant's request for such relief is relevant.

Considering the non-violent nature of the crime and Woolsey, good prison record, the Court has no objection to halfway-house placement on a date sooner than the BOP has scheduled presently.

IV.

Woolsey has not exhausted his administrative remedies, and he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.  However, he appears to be a good candidate for release to a community corrections center.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 168) is **DENIED**.

It is further **RECOMMENDED** that the BOP consider placing the defendant in a community corrections center at an earlier time under 18 U.S.C. § 3624(c)(6)(C).

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 15, 2020